J. C. HUBBARD, Adm'r. v. JOSIAH SMITH and W. H. WILLIAMSON.

1. TRUST DEED. *Bill to sell.* *Liability of trustee.* If a creditor file a bill asking a sale by the court of property conveyed by deed of trust, the property is then in *custodia legis.* and the trustee cannot be held responsible unless for wilful misappropriation.

2. CHANCERY PLEADINGS AND PRACTICE. *Report of clerk and master.* If a clerk and master report upon matters not referred to him, his report thereon is a nullity and no exception need be taken.

FROM WILSON.

Appeal from the Chancery Court at Lebanon. H. H. LURTON, Ch.

J. J. TURNER for complainant.

MARTIN & BAIRD and W. H. WILLIAMSON for defendants.

DEADERICK, C. J., delivered the opinion of the court.

In September, 1867, defendant Smith executed to his co-defendant a trust deed to secure his creditors. Two creditors were preferred, and the proceeds of the trust property, after paying these two preferred creditors, were to be paid *pro rata* to the other creditors, who are not named, if not sufficient to pay them in full.

In December, 1867, the complainant claiming that his intestate was a creditor of Smith, filed his bill against him and the trustee, alleging that his intestate and defendant Smith had had large dealings, and that their accounts were complicated and could only be settled by a regular account in chancery.   It is further alleged in the bill that the defendant, to further complicate and delay a settlement of their accounts, had made a deed of trust to defendant Williamson, conveying all his real and personal estate, and by the terms of said deed it is not to be closed until the 1st day of September, 1869, and that the trustee had not qualified or given bond.   It is also charged that the land is being injured by the destruction of timber, and the personalty is being wasted, and the property may not be sufficient to pay the debts.   Complainant exhibits his notes and accounts against defendant Smith, and prays that unless said trustee immediately qualifies and gives bond, a receiver be appointed to take charge of the property, and prays that the trustee be required to rent the land, and that Smith be enjoined from cutting timber and that an account be ordered, and a decree be pronounced in his favor, for the amount ascertained to be due his intestate, and that the property conveyed in the deed of trust be sold to pay the same, and for general relief.

The injunction to stay waste was granted, and the chancellor further directed if the trustee did not qualify in twenty days, the clerk and master should take charge of the estate and rent the real estate for 1868.

The trustee gave bond and qualified in January,

1868, and in September of that year he and defendant Smith filed their joint and separate answer to the bill, in which the trustee sets out the fact that he had qualified as such, and Smith admits transactions with intestate in his lifetime—some of which were unsettled—pleads the statute of limitations as to a number of claims set up by complainant, and exhibits charges against him—denies the commission of waste.

At October term, 1873, complainant obtained a decree against Smith for $1,769.81 and costs, and thereupon he filed an amended and supplemental bill, November 26, 1874, against defendants Smith and Williamson and W. P. M. Smith and W. H. Evans, the said W. P. M. Smith and Evans being the sureties of Williamson on his bond as trustee.

This amended bill alleges that at October term, 1873, the said Williamson, as trustee and commissioner, had been ordered by the decree of that term, to sell the land conveyed in trust, which he failed and refused to do until October, 10, 1874, when it brought at a sale then made, $10,522, and the personal property but $101.35. In the meantime, in July, 1874, the said Smith died, leaving a widow. The trust not having been closed, the widow was entitled to, and claimed dower in the land, which was assigned to her, thereby injuring the sale of the land to the extent of about $3,000; that the debts amounted to about $14,000, and the proceeds of sales will be insufficient to pay them. The supplemental bill prays for an account of the assets which came, or ought to have come, into the hands of said trustee, and that he be held liable

for failure to rent out the mill and lands, and for the personal effects conveyed in the trust deed, and for failure to collect accounts due the said Smith. And further prays that the trustee and his sureties may be held liable for the losses occasioned by the failure, as trustee, to perform his duty.

Defendants all jointly answered the supplemental bill, relying upon demurrers theretofore taken.

Respondent insists that the trustee is not responsible for the depreciation of the lands after the making of the trusts, nor for the diminished value thereof, by reason of the death of Smith, and the consequent right of dower of his widow, and avers at the time of filing of the original bill he was preparing to sell the property, but after that, until so ordered by the court, he had no power to sell, as said property was from that time *in custodia legis,* and subject to the orders and decrees of the court.

The trustee excuses himself from selling under the decree of the court, upon the ground of a financial panic, and because the lands had recently thereafter been overflown by the backwaters of the Cumberland river, and the fences destroyed so as greatly to depreciate it in the market, and believing it for the best interest of all interested, he did not sell as directed by the chancellor.

By decree at October term, 1875, the chancellor so far sustained defendant's demurrer to the amended and supplemental bill, as it sought to hold the trustee liable for rents of the mortgaged lands, and also to charge defendants for the failure of the trustee to sell the

land previous to the decree of October term, 1873, and for deterioration of the real estate and mills. But the bill was retained so far as it sought to charge the defendant on account of failure of the trustee to protect the personal property, and to account for any loss sustained by the wrongful failure of the trustee to sell the property as directed by the decree of the October term, 1873.

By decrees of the October term, 1874, the master was directed to settle with the trustee and to report. This decree was revived at May term, 1876.

The master subsequently reported as to the property and debts, and also as to the state of accounts between the trustee and creditors. He reports that the trustee had accounted for all the personalty which came to his hands. As to his liability for failing to sell as directed by the decree of October term, 1873, the master reports that there is no evidence to show that any damage resulted thereform.

As to this last item there were no specific directions to the master to report. But the former decrees reserved this question, and instructed the master to settle with the trustee. The report was unexcepted to and confirmed, from which the complainant appealed.

We think it very clear, that after the filing of complainant's original bill, in which he prays for an account, and sale of the property for the payment of the amount due to him, that the property was in *custodia legis,* and that the trustee could only act in respect to it, under the orders and by the direction of the chancellor. And the trustee could not be

held responsible for it, unless wilfully misappropriated. There was, therefore, no error in the chancellor's decree, refusing to charge him with rents, nor upon confirmation of the master's report in respect to the personalty.

It may be doubtful whether any thing in previous decrees authorized a report as to the liability of the trustee for damages for failing to sell under the order of October term, 1873.

Damages were claimed by the supplemental bill for this failure, and the master was directed to make a settlement with the trustee, but no specific order was given as to this item of liability.

If not referred to him his report thereon was a nullity, and no exception was necessary. But the party should have it referred back to the master: 2 Dan'l. Ch. Pl. & Pr. 1297-8.

But whether the reference warranted this report or not, we are of opinion that the evidence warranted the decree of the chancellor in holding that the said trustee was not liable for any damages for failing to sell under the decree of October term, 1873.

It does not appear that any damages resulted from such failure, on the contrary, the facts disclosed in the record tend to show the contrary. The death of Smith, whereby his widow became entitled to dower, was an unexpected and unavoidable contingency, for which the trustee could not be held responsible. The record does not show that complainant made any application for the sale of the land before he obtained his decree in October, 1873. And respondents cannot

17—VOL. 10.

be said to be more responsible for the deterioration or loss of the property, up to that time, than the complainant.

Upon the whole, we think the chancellor's decree ·correct, and affirm it.